*Mary T. Newsom v. Brock & Scott, PLLC, et al.*, No. 532, Sept. Term 2019. Opinion by Meredith, J.

**CONSUMER PROTECTION – MARYLAND CONSUMER DEBT COLLECTION ACT**. The Maryland Consumer Debt Collection Act (the "MCDCA"), Maryland Code (2013 Repl. Vol., 2015 Supp.), Commercial Law Article ("CL"), provides in § 14-202(8): "In collecting or attempting to collect on an alleged debt a collector may not: … [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." The Court of Appeals has rejected the distinction that some courts have drawn between "methods" of debt collection and "amounts" of debts sought to be collected when assessing a claim under CL § 14-202(8). A plaintiff is not precluded from invoking CL § 14-202(8) when the amount claimed by the debt collector includes sums as to which the debt collector had knowledge there was not a right to collect.

**CONSUMER PROTECTION – MCDCA, CL § 14-202(8) – "WITH KNOWLEDGE" ELEMENT.** In order to prevail under CL § 14-202(8), a plaintiff must show that a debt collector acted with knowledge that the right to collect does not exist. This element may be proved by evidence that shows either actual knowledge *or* reckless disregard as to the error in claiming a right to collect the amount. Although CL § 14-202(8) does not impose strict liability on a debt collector for a mistake of law, neither does a debt collector escape liability under CL § 14-202(8) whenever, in the absence of controlling authority, the collector makes a mistake of law. And, in a case where the law is settled at the time a collector takes a contrary position in claiming a right, the collector's recklessness in failing to discover the contrary authority is equivalent to actual knowledge of that legal authority. A debt collector's state of knowledge in claiming, attempting, or threatening to enforce a claimed debt is a question of fact.

**REAL PROPERTY – TENANCY BY THE ENTIRETIES – ATTEMPT OF ONE SPOUSE TO CREATE A LIEN OR ENCUMBRANCE UPON PROPERTY HELD AS TENANTS BY THE ENTIRETIES.** In Maryland, when a married couple holds title to real estate as tenants by the entireties, neither spouse acting alone and without the authorization of the other spouse can convey any interest in the property or create a valid encumbrance upon the property.

Circuit Court for Prince George's County
Case No. CAE17-20035

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 532

September Term, 2019

_____

MARY T. NEWSOM

v.

BROCK & SCOTT, PLLC, ET AL.

_____

Meredith,*
Graeff,
Eyler, James R.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Meredith, J.

_____

Filed: November 24, 2021

*Meredith, Timothy E., J., now retired, participated in the hearing of this case while an active member of this Court, and after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the preparation of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case arose from efforts by Capital One to collect a debt by initiating foreclosure proceedings against real estate owned by Mary T. Newsom, appellant. Mrs. Newsom and her husband had held title to the property jointly as tenants by the entireties from 1979 through the time of Mr. Newsom's death in 2015. According to Mrs. Newsom, prior to her husband's death, her husband had, without her knowledge, apparently borrowed money from Capital One. The loan was evidenced by a promissory note signed by the husband alone. But the husband also signed a deed of trust (the "Deed of Trust") that purported to create a lien upon the residence that had been owned by the married couple as tenants by the entireties. The Deed of Trust also bore the purported signature of Mary Newsom, but she steadfastly denied signing or having any knowledge about the loan or the signing of the Deed of Trust.

After the husband died and payments on the loan ceased, Capital One sent letters—addressed first to the husband, and later to Mrs. Newsom—demanding payment and threatening that the house would be sold at a foreclosure sale if the loan was not brought current. Mrs. Newsom notified Capital One that her husband had died, and that she had no knowledge about her husband's loan. She explained that she never executed either a promissory note or Deed of Trust in connection with the loan.

Capital One nevertheless continued to treat the debt as collectible, and engaged the law firm of Brock & Scott, PLLC (hereafter sometimes referred to as "Brock & Scott" or "B&S")—one of the appellees—to pursue collection. B&S assigned several of its attorneys, including Christine Johnson (the second appellee), to serve as substitute trustees under the Deed of Trust and proceed with foreclosure upon the property owned

by Mrs. Newsom by virtue of being the surviving tenant by the entireties. Mrs. Newsom's attorney sent Brock & Scott copies of letters that had been sent to Capital One denying knowledge of the loan and the Deed of Trust. Nevertheless, B&S sent Mrs. Newsom notice of its intent to foreclose upon her home, and Ms. Johnson and other B&S attorneys initiated a foreclosure action by filing an order to docket suit in the Circuit Court for Prince George's County.

Mrs. Newsom, through counsel, filed a motion pursuant to Maryland Rule 14-211 to dismiss the foreclosure action. She also filed a separate suit (which is the subject of this appeal) against Capital One and Brock & Scott, alleging violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Maryland Code, Commercial Law Article ("CL"), §§ 14-201 *et seq.*; and the Maryland Mortgage Fraud Protection Act, Maryland Code, Real Property Article ("RP"), §§ 7-401 *et seq.* Capital One eventually entered into a settlement with Mrs. Newsom that terminated the foreclosure proceeding and resulted in Capital One being dismissed as a defendant in this case.

In an amended complaint that omitted Capital One and added Christine Johnson as a defendant, Mrs. Newsom alleged that Brock & Scott and Christine Johnson had violated the Maryland Consumer Debt Collection Act (Count I) and the Maryland Mortgage Fraud Protection Act (Count II), and had committed the tort of malicious use of process (Count IV). The amended complaint also alleged that Brock & Scott had committed the tort of injurious falsehood (Count III). A jury trial proceeded on those claims, and, at the close of Mrs. Newsom's case-in-chief, the appellees moved for

judgment pursuant to Maryland Rule 2-519. The trial court granted the appellees' motion

for judgment as to all counts. This timely appeal followed.

## QUESTIONS PRESENTED

The questions presented by Mrs. Newsom, which we have reordered and

rephrased, are the following:[1]

1.  Did the circuit court err in denying Mrs. Newsom's pretrial motion for partial summary judgment?

2.  Did the trial court err in granting the appellees' motion for judgment on the counts alleging violations of (1) the Maryland Consumer Debt Collection Act, and (2) the Maryland Mortgage Fraud Protection Act?[2]

3.  Did the trial court err in excluding certain evidence from being introduced in Mrs. Newsom's case-in-chief?

4.  Did the trial court err in denying Mrs. Newsom's motion for recusal of the trial judge?

For the reasons explained herein, we will vacate the judgment of the circuit court

granting the appellees' motion for judgment on Count I (alleging violation of the

---

[1] The questions as presented by Mrs. Newsom in her brief are as follows:

1.  Did the Circuit Court err in denying Newsom's summary judgment motion?
2.  Did the Circuit Court err by excluding certain evidence which was relevant and material to the Parties' claims and defenses?
3.  Did the Circuit Court err by granting Substitute Trustees' Motion for Judgment?
4.  Do the irregular and improper proceedings below give the objective appearance to a reasonable member of the public that Newsom was denied her right to a fair and impartial day in court?

[2] In this appeal, Mrs. Newsom raises no issue with respect to the trial court's grant of appellees' motion for judgment relative to the counts asserting the common law torts of injurious falsehood and malicious use of process.

Maryland Consumer Debt Collection Act) and Count II (alleging violation of the Maryland Mortgage Fraud Protection Act), but we will affirm the unchallenged judgment in favor of the appellees with respect to Counts III and IV. We will remand the case for a new trial on Counts I and II.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence, considered in the light most favorable to Mrs. Newsom, included the following facts.

In 1979, Mrs. Newsom and her husband, Leslie "Boh" Newsom, received, as a wedding gift from Mr. Newsom's aunt, a parcel of unimproved real property located at 13010 Old Fletchertown Road in Bowie, Maryland ("the Property"). Several years later, they developed plans for a residence they constructed upon the Property. They moved into that home in 1987, and lived together in that home until Mr. Newsom died in 2015. The Newsoms held title to the Property as tenants by the entireties. Mrs. Newsom still resided in the home at the time of the trial in this case.

After Mr. Newsom died intestate on May 24, 2015, Mrs. Newsom opened an estate and was appointed personal representative. Based upon information she received from a staff person at the office of the register of wills, Mrs. Newsom notified all known creditors of Mr. Newsom's passing as well as the opening and administration of his estate. She also published a notice to creditors.

After her husband's death, Mrs. Newsom began to receive correspondence from Capital One about a line of credit her husband had obtained from Capital One in 2011. Because the Newsoms had customarily kept their business affairs separate, Mrs. Newsom

4

was surprised to learn that her husband was indebted to Capital One. By letter dated October 22, 2015, Mrs. Newsom notified Capital One of her husband's death and further advised the creditor:

I have reported Mr. Newsom's demise to local bank representatives (along with documentation that I am providing with this letter). Still, several pieces of correspondence from your bank were sent to his attention following his death. I am responding [to] the most recent of those items; Home Equity Line of Credit Statement.

As the Estate Administrator (document enclosed), I inform you that Mr. Newsom's estate is insolvent. Only the estate of the deceased is liable for the debt owed and family members are not personally responsible for payment of this debt.

If there is any other information that you feel is relevant to this account, please provide written documentation for legal consideration.

According to Mrs. Newsom, on February 23, 2016, Alice G. Pinderhughes (Mrs. Newsom's attorney at the time) notified Capital One in writing that "Mrs. Newsom never executed a Promissory Note and/or deed of trust for the [Property]," and "Mrs. Newsom has no knowledge of this debt." Ms. Pinderhughes requested that all correspondence to Mrs. Newsom concerning this matter cease immediately, but if there were any questions, "please do not hesitate to contact me." Neither Ms. Pinderhughes nor Mrs. Newsom received a response to the letter of February 23, 2016.

On March 31, 2016, Mrs. Newsom received correspondence from Capital One's Loss Mitigation Department, addressed to the Estate of Leslie B. Newsom, stating that the loan had been "referred to an attorney with instructions to begin foreclosure proceedings," and any questions could be directed to Brock & Scott, appellee.

5

On April 27, 2016, Ms. Pinderhughes sent another letter to Capital One via fax, with a copy to Brock & Scott, again reiterating that "Mrs. Newsom never executed a Promissory Note and/or deed of trust for the [Property]," and "has no knowledge of this debt." The letter restated that Mr. Newsom had died, and the property had been titled to both of them. Ms. Pinderhughes faxed a copy of her April 27 letter to Brock & Scott. Mrs. Newsom did not receive a response from Brock & Scott—either directly or through Ms. Pinderhughes—to Ms. Pinderhughes's April 27 letter.

On May 17, 2016, Brock & Scott sent a letter addressed to The Estate of Leslie B. Newsom at the Property address, stating: "The above referenced loan has been placed with Brock & Scott, PLLC ('B&S') for foreclosure." The letter asserted that Capital One, N.A. was owed $52,501.06. Among other statements, the letter included an advisement stating: "**THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" (Capitalization and boldface in original.) When Mrs. Newsom read the letter, she understood it to mean "that Capital One was escalating their efforts to take my house."

Capital One sent a "Notice of Intent to Foreclose," dated August 18, 2016, to Mrs. Newsom. Among other statements, the notice stated: "**You are at risk of losing your home to foreclosure.** You have missed one or more payments on your mortgage loan or you are otherwise in default." (Boldface in original.) The notice further stated that the names of the "Borrower(s)" were "LESLIE NEWSOM [and] MARY NEWSOM," and the name of the Mortgage Lender was: "Chevy Chase Bank, F.S.B." The Notice of Intent to Foreclose stated that the date of default was November 11, 2015.

6

Mrs. Newsom felt sick after receiving the notice of intent to foreclose. She explained: "I'm 70 and I was losing everything. And there would be no way of making it up again." She hired another attorney to represent her in the foreclosure action.

At some point, she learned more about the source of Capital One's claim that there was a mortgage on her home. Considering the evidence in the light most favorable to her, it appears that, on October 25, 2011, Mr. Newsom had agreed, without her knowledge, to accept a home equity line of credit in the amount of $50,000.00 from Capital One, National Association ("Capital One"). As part of the loan documentation for that transaction, Mr. Newsom alone had signed a promissory note. Mr. Newsom had also signed a Deed of Trust that purported to grant Capital One a security interest in the Property as collateral for the $50,000 line of credit. Although the Deed of Trust also bears a signature above the signature line for Mary T. Newsom, Mrs. Newsom was adamant that she did not know about the loan, did not attend any loan closing, and did not sign the Deed of Trust. As of the time Mr. Newsom died in 2015, the Deed of Trust had not been recorded among the Land of Records of Prince George's County. Nor was the Deed of Trust recorded within six months after Mr. Newsom's death. Even when Brock & Scott sent the notice of intent to foreclose in August 2016, the Deed of Trust remained unrecorded.

The Deed of Trust dated October 25, 2011, was recorded by Brock & Scott in 2017. When Brock & Scott first attempted to record the instrument, it was returned to them "from the land records in Prince George's County advising that a lender's

certification was missing." "There was a missing affidavit from the lender." The Deed of Trust was finally recorded by Brock & Scott on February 25, 2017.

At the trial of this case, when Mrs. Newsom was shown the Deed of Trust that purported to bear her signature, she steadfastly denied she had signed that document. The following colloquy during her direct examination appears in the record:

Q. [BY COUNSEL FOR MRS. NEWSOM] . . . So there's a signature above the printed name, Mary T. Newsom.

A. [BY MRS. NEWSOM] Yes.

* * *

Q. And did you sign this document?

A. No.

Q. Did you appear before [the notarial witness] Linda Wagstaff on . . . October 25, 2011?

A. No, I have never used Linda Wagstaff for a notary.

Q. Did you ever authorize anyone to sign your name on this deed of trust?

A. No.

* * *

Q. Ms. Newsom, since we broke your testimony overnight, I just wanted to go back one final time to make sure. On Exhibit 7, the deed of trust . . .

* * *

Is that your signature?

A. No.

* * *

Q. When I asked you if that was your signature earlier, do you have any doubts in that answer?

A. No.

On cross-examination, Mrs. Newsom reiterated that she did not sign the Deed of Trust dated October 25, 2011:

Q. [BY COUNSEL FOR APPELLEES] Now, ma'am, I'm going to show you a series of documents that bear a date of October 25, 2011. . . . And would you look at the signatures there and tell me, ma'am, whether or not these signatures in October of 2011 are your signatures and the signatures of your husband.

A. [BY MRS. NEWSOM] It appears to be, but I was not present for any loan in 2011. I was not present at any time in 2011.

Q. So the signature that appears for Mary Newsom, you say that's not your signature?

A. I'm saying it looks like my signature, but I was not there to sign.

* * *

Q. But your testimony is that . . . despite the fact it looks like your signature, is not your signature, right?

A. Right.

* * *

Q. . . . We are not going to belabor this any further, but . . . the deed of trust, that's not your signature, right?

A. Right.

On April 13, 2017, Capital One executed a "Deed of Appointment of Substitute Trustee," appointing appellee Christine Johnson, and six other B&S attorneys (Thomas W. Hodge, Gene Jung, Laura D. Harris, Robert M. Oliveri, Scott Robinson and Louis

9

Gingher) to serve as substitute trustees. The deed of appointment was recorded in the Prince George's County Land Records.

On May 5, 2017, the appellees initiated an action in the Circuit Court for Prince George's County to conduct a foreclosure sale of the Property by filing an order to docket, which was assigned case number CAEF17-11086. The required affidavit of default and mailing of a notice of intent to foreclose that was filed in support of the order to docket stated that a default under the Deed of Trust "occurred on November 11, 2015, when borrower(s), Leslie B. Newsom and Mary T. Newsom, failed to make the installment payment due on November 10, 2015." The affidavit also stated that the required Notice of Intent to Foreclose was the one sent on August 18, 2016, and that "the contents of the Notice were accurate at the time it was sent." The required affidavit of indebtedness asserted that Capital One "has the right to foreclose against the property subject to the Deed of Trust."

On June 5, 2017, Mrs. Newsom, through counsel, filed a motion pursuant to Rule 14-211 to dismiss the foreclosure action, and requested a hearing. In her Rule 14-211 motion, she argued, among other things, that Capital One had no legal interest in the Property because what appears to be Mrs. Newsom's signature on the Deed of Trust was forged, and one spouse, acting alone, cannot legally encumber property that is held as tenants by the entireties. The motion asserted that the appellees "may not knowingly continue this action based upon a void deed of trust which never legally attached to the subject property because it (i) was not signed by all parties of the marriage, (ii) contains a forged signature, and (iii) is otherwise unenforceable under Maryland law." Although the

10

circuit court initially denied the Rule 14-211 motion without a hearing, Mrs. Newsom, through counsel, filed a motion for reconsideration, citing *Mitchell v. Yacko*, 232 Md. App. 624 (2017) ("*Yacko I"),* for the proposition that forgery was a defense. The court granted Mrs. Newsom's motion for reconsideration on September 26, 2017, and, although the court denied Mrs. Newsom's request to consolidate the foreclosure action with her suit for damages, the court stayed the foreclosure action.

On August 11, 2017, Mrs. Newsom, through counsel, had filed a separate suit against Capital One and Brock & Scott. The lawsuit for damages was docketed as case number CAE17-20035 (the action that is the subject of this appeal). In her amended complaint, Mrs. Newsom claimed that the appellees B&S and Johnson "knowingly maintained . . . a right to foreclose on the Property with knowledge that no such right existed." In Count I of her amended complaint, Mrs. Newsom alleged that the appellees violated the Maryland Consumer Debt Collection Act ("MCDCA"), codified at Maryland Code (1975, 2013 Repl. Vol.), Commercial Law Article ("CL"), §§ 14-201, *et seq*. In particular, she asserted that appellees violated CL §§ 14-202(8)-(9) of the Maryland Consumer Debt Collection Act, which provide:

In collecting or attempting to collect an alleged debt a collector may not:

* * *

(8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist; [or]

(9) Use a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not; . . . .

11

The suit claimed money damages, which are authorized in CL § 14-203 as follows:

> A collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.[3]

In Count II, Mrs. Newsom asserted that appellees violated the Maryland Mortgage Fraud Protection Act ("MMFPA"), codified at Maryland Code (1974, 2015 Repl. Vol.), Real Property Article ("RP"), §§ 7-401, *et seq.* She alleged that appellees violated RP §§ 7-401(d)(1)-(4), which provide:

> (d) "Mortgage fraud" means any action by a person made with the intent to defraud that involves:
>
> (1) **Knowingly making any deliberate misstatement, misrepresentation, or omission** during the mortgage lending process **with the intent that the misstatement, misrepresentation, or omission be relied on by a** mortgage lender, **borrower, or any other party to the mortgage lending process**;
>
> (2) **Knowingly creating or producing a document for use** during the mortgage lending process **that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a** mortgage lender, **borrower, or any other party to the mortgage lending process**;
>
> (3) **Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission** during the mortgage lending process **with the intent that the misstatement, misrepresentation, or omission be relied on by a** mortgage lender, **borrower, or any other party to the mortgage lending process**;

---

[3] In *LVNV Funding LLC v. Finch*, 463 Md. 586, 612 (2019), the Court of Appeals, after quoting CL § 14-203, observed: "It is hard to imagine . . . a clearer expression of an intent to provide a private remedy for the violation of [MCDCA based upon a violation] of MCALA – a remedy that permits recovery of 'any damages,' including for emotional distress."

(4) Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1), (2), or (3) of this subsection; . . . .

(Emphasis added.)

In Counts III and IV, Mrs. Newsom also asserted claims of injurious falsehood and malicious use of process. But, as noted above, in this appeal, Mrs. Newsom raises no issue with respect to the trial court's grant of appellees' motion for judgment with respect to Counts III and IV. (In her Reply Brief, she stated: "Newsom did not challenge the lower court's rulings on those claims in her opening brief and they are therefore not before the Court.")

During August 2017, Brock & Scott sent several more letters to Mrs. Newsom regarding its effort to collect the monies it claimed were due Capital One relative to the Deed of Trust that Mrs. Newsom had told them she did not sign. The letters were dated August 7, 2017; August 9, 2017; and August 30, 2017. Each of the letters indicated at the top that the "Mortgagor(s)" were "Leslie B. Newsom and Mary T. Newsom." Each of the letters began with this statement: "The above-referenced account has been placed with Brock & Scott, PLLC ('B&S') for foreclosure." And, although the opening paragraph of the letters claimed that "[t]his letter is not a demand for payment or money from you, and should not be interpreted or construed as demand for payment or money from you by B&S," the letters also stated in bold-face all caps: "**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**"

13

On September 10, 2018, Capital One and Mrs. Newsom entered into a "Confidential Settlement Agreement and Release of Claims." As provided for in the agreement, the trial court ordered that the agreement be reviewed at the trial of this case, and was aware that Capital One had agreed to dismiss the foreclosure case with prejudice, to release the note and Deed of Trust, and to pay Mrs. Newsom a sum of money in exchange for her releasing Capital One from liability in this case. The settlement agreement between Mrs. Newsom and Capital One also stated that Mrs. Newsom's claims against the appellees were not released, settled, or compromised.

On September 20, 2018, at the request of Capital One, the appellees filed in the foreclosure action a "Motion to Dismiss Case with Prejudice pursuant to Maryland Rule 2-506(c)." On September 21, 2018, the circuit court entered the foreclosure action as "Dismissed[.]" At the trial in this case, Mrs. Newsom observed that, by the time the voluntary dismissal was filed, the action that Brock & Scott had filed seeking to foreclose upon her home had been pending for "[a]lmost 500 days."

Additional facts will be supplied in the following discussion of issues.

## DISCUSSION

### I. Mrs. Newsom's motion for partial summary judgment

Prior to trial, Mrs. Newsom moved for partial summary judgment, arguing that, based upon undisputed facts, she was entitled to the entry of a judgment as to liability on her claim in Count I pursuant to the Maryland Consumer Debt Collection Act. Mrs. Newsom supported her motion for partial summary judgment with numerous exhibits. She asserted that it was beyond dispute that the appellees were "debt collectors" subject

14

to MCDCA, and that they had initiated the foreclosure action at a time when they "knew that the debt . . . which they sought to collect was barred from collection by Est. & Trusts § 8-103(a) since the purported debt was (i) unsecured at the time of Mr. Newsom's death . . . and (ii) Capital One never filed any timely claim with the Estate of Leslie Newsom . . . ."[4]

The appellees filed an opposing response, arguing that Mrs. Newsom failed to establish that the appellees "acted with knowledge as to the invalidity of the debt." They also argued that Mrs. Newsom failed to prove either that her apparent signature on the Deed of Trust was forged or that the appellees knew or should have known of the forgery. Regarding the failure of Capital One to formally assert a claim against the estate of Mr. Newsom, the appellees argued that, as a secured creditor, Capital One was not required to file a claim against the estate. The appellees also attached numerous exhibits to their reply.

---

[4] Section 8-103(a) of Maryland Code (1974, 2017 Repl. Vol.), Estates and Trusts Article ("ET"), provides:

(a) Except as otherwise expressly provided by statute with respect to claims of the United States or the State, a claim against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, is forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

(1) 6 months after the date of the decedent's death; or

(2) 2 months after the personal representative mails or otherwise delivers to the creditor a copy of a notice in the form required by § 7-103 of this article or other written notice, notifying the creditor that the claim will be barred unless the creditor presents the claim within 2 months after the mailing or other delivery of the notice.

On December 21, 2018, the circuit court heard oral argument on open motions, including Mrs. Newsom's motion for partial summary judgment. At oral argument, Mrs. Newsom conceded that the question of whether the signature appearing on the Deed of Trust was "forged" was "a fact issue for the jury." The circuit court took the motion under advisement. On December 27, 2018, the circuit court entered an order denying the motion; it did not provide any oral or written opinion setting forth the rationale for denying the motion.

Mrs. Newsom contends that the circuit court erred in denying her motion for partial summary judgment because the evidence is clear that neither Capital One nor the appellees filed a claim in Mr. Newsom's estate pursuant to ET § 8-103(a), and the appellees nevertheless commenced an action to foreclose on the Property by filing an order to docket suit.

The appellees argue that the circuit court was legally correct in denying Mrs. Newsom's motion because "Capital One had the right to enforce its security interest" under the Deed of Trust, and did not need to file a claim with the estate because ET § 8-103(d) exempts mortgages from the requirement of filing all creditors' claims against an estate within six months after the death of the decedent.[5] They also argue that, "it has

---

[5] ET § 8-103(d) provides:

**Enforcement of mortgages, pledges, judgments, or other liens**

(d) Nothing in this section shall affect or prevent an action or proceeding to enforce a mortgage, pledge, judgment or other lien, or security interest on property of the estate.

16

never been proven that Mary T. Newsom's signatures and initials on the October 25, 2011 Deed of Trust and accompanying Finance Affidavit were forged."

Maryland Rule 2-501(f) provides: "The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." In general, the appellate courts review a circuit court's *denial* of a motion for summary judgment—in contrast to the *grant* of a motion for summary judgment—for abuse of discretion. In *Housing Authority of Baltimore City v. Woodland*, 438 Md. 415 (2014), the Court of Appeals explained that, when "presented with a pretrial motion for summary judgment, a court has discretion to 'affirmatively . . . deny . . . a summary judgment request in favor of a full hearing on the merits; and this discretion exists even though the technical requirements for the entry of such a judgment have been met.'" *Id.* at 426 (quoting *Metropolitan Mortg. Fund, Inc. v. Basiliko*, 288 Md. 25, 28 (1980)). *Accord Dashiell v. Meeks*, 396 Md. 149, 165 (2006) (Stating that, ordinarily, "'It is not reversible error for [the motion judge] to deny the motion and require a trial.'" (quoting *Foy v. Prudential Ins. Co. of America*, 316 Md. 418, 424 (1989)).

This case is not one of the exceptions to the normal rule that permits a judge hearing a motion for summary judgment to deny the motion even though the technical requirements for the entry of such a judgment have been met. At the hearing on the motion for partial summary judgment, the motion judge expressed concern that there were genuine disputes of material facts. With respect to the validity of the Deed of Trust

17

that was allegedly not signed by Mrs. Newsom, counsel for Mrs. Newsom told the court that whether the Deed of Trust was forged was a "fact issue for the jury." Counsel for Mrs. Newsom stated:

> [COUNSEL FOR MRS. NEWSOM]: Now, in our summary judgment motion we filed a cross-motion for summary judgment. Not on all claims. We did not file a cross motion for forgery. . . . We didn't ask for the Court to rule that something is forged . . . . There's a basic, simple reason for that, Your Honor. That's a fact issue for the jury. You can't make that ruling. We can't prove that at a summary judgment stage or they can't prove it at a motion to dismiss. All we can do is put them on notice of the issue.

Similarly, the circuit court and counsel for appellees had the following exchange:

> [COUNSEL FOR APPELLEES]: The entire claim is - - the alleged forgery of [Mrs. Newsom's] name is the critical fact that underlies this whole case. If there is no forgery, then everything is proper.
>
> THE COURT: Isn't that a factual question that a jury would have to decide?
>
> [COUNSEL FOR APPELLEES]: If it got to that point. But my point is for purposes of - -
>
> THE COURT: But I think that's what [counsel for Mrs. Newsom] was saying. If I'm not mistaken, I believe that plaintiff's counsel was indicating that that's a factual issue that the Court can't rule upon in these motions. He wasn't saying that it doesn't matter whether or not there was a forgery.
>
> [COUNSEL FOR APPELLEES]: Okay. Well, viewing it through that analysis, then, it still doesn't give rise to any allegations of wrongdoing by my clients . . . .

Although counsel for Mrs. Newsom contends her statute of limitations argument relative to claims against an estate provided the motion court an independent basis to find the Deed of Trust unenforceable as a matter of law, the appellees contend that ET § 8-103(d) provided an arguable exception to the time limit for claims against an estate

18

imposed in ET § 8-103(a). And the resolution of that dispute turns upon the validity of the Deed of Trust, which turns upon the question of whether that document was signed by Mrs. Newsom, which is a question of fact.

Consequently, at the time of the hearing on Mrs. Newsom's pretrial motion for summary judgment, there was sufficient uncertainty regarding the facts in this case that it was not an abuse of discretion for the motion judge to deny the motion.

## II. Appellees' motion for judgment on Counts I and II

Mrs. Newsom contends that the trial court erred in granting the appellees' motion for judgment with respect to Counts I and II at the close of the plaintiff's case. The following excerpts from the court's oral ruling summarize the trial court's explanation for granting the appellees' motion on those counts:

> [THE COURT]: So the first allegations the Court really looked at was the allegation that the deed of trust is a forgery. And in examining that – and the Court will just say initially that it believes plaintiff has been very blunt on this, and appropriately so, that they have been unable to really prove how the forgery came about, who forged it for what purposes . . . . So the Court does understand that plaintiff's counsel has largely conceded the inability to prove . . . who . . . forged it and for what purpose.

> * * *

> [T]here is no factual dispute that Brock & Scott was in any way involved in the creation of the deed of trust . . . . So from that end, there's simply no factual matter that can be put before this jury that Brock & Scott . . . [and] defendant Christine Johnson can in any way be held liable or otherwise responsible for the forgery of the document [*i.e.*, the Deed of Trust].

> * * *

> The Court, however, goes back to the fact that all of those documents . . . were prepared by Capital One. So the question becomes, how is Brock & Scott, as the substitute trustee, vicariously liable as the

19

agent to Capital One? . . . [V]icarious liability flows up. It flows up from the agent to the principal. It does not flow down from the principal to the agent.

There is no standard of care presented for the substitute trustee in this case. There is no standard of care presented for attorneys when filing foreclosure actions. . . .

But quite frankly, the Court is not convinced that the substitute trustee bears a specific standard of care to investigate behind the beneficiary of the deed of trust. It takes its directions from the beneficiary and acts accordingly.

\* \* \*

[A]t no point is there any evidence that [Mrs. Newsom], in fact, was deceived by [communications from Brock & Scott] or that she, in fact, thought that she owed any of these sums, because consistently throughout [Mrs. Newsom] took the stand that she personally was not liable on either the deed of trust or certainly not on any revolving line of credit.

\* \* \*

But again, . . . even if there were misstatements on the foreclosure documents, those are laid at the feet of Capital One. . . . Capital One is a released party . . . and we are trying to now extend liability beyond Capital One to Brock & Scott.

\* \* \*

[T]here is no evidence that Brock & Scott played any role in the deed of trust, that it did not create the deed of trust, it was not present when the deed of trust was signed, it did not - - none of the affiants on the deed of trust are any of Brock & Scott's employees. There's simply no evidence of that in the record at all.

\* \* \*

[T]he *Pagenhardt versus Walsh* case[, 250 Md. 333, 335-38 (1968),] does talk about equitable mortgages and how if an affidavit for consideration is in some way defective, that it makes the mortgage voidable as opposed to void. But it also creates an equitable mortgage between the grantor and the grantees or the mortgagees.

20

\* \* \*

> [I]n light of the Blackstone ruling [*Blackstone v. Sharma*, 461 Md. 87 (2018)], the Court does not find that CJP 5-1201, et cetera, is applicable to foreclosure cases.
>
> So having run through all that, the Court believes that it has covered every basis of liability that [Mrs. Newsom] could conceivably assert either under the Maryland [Consumer] Debt Collection Act or the Maryland Mortgage Fraud Protection Act, and as such, there are insufficient facts, even in a light viewed most favorably to [Mrs. Newsom], to allow this case to proceed to the jury.

Mrs. Newsom argues that the trial court's rulings with respect to Counts I and II were legally incorrect for a number of reasons. First, Mrs. Newsom argues the "trial court improperly added the element of a 'breach of standard of care' . . . under the MCDCA[.]" Second, Mrs. Newsom asserts that the trial court "erroneously held that [she] had the burden to prove the Appellees were involved in the forgery of her purported signature in order to advance that theory of her MCDCA and MMFPA claims." Third, Mrs. Newsom argues that the trial court erred in concluding that "the evidence showed that an equitable mortgage existed and was secured by the unrecorded DOT." Fourth, Mrs. Newsom asserts: "There was no legal basis for the Circuit Court to enter judgment on the legal conclusion that other legal theories supporting her actual well pled claims under the MCDCA and MMFPA, were not identified in Newsom's Amended Complaint." Fifth, Mrs. Newsom argues that the trial court erred in faulting other judges for not addressing more disputes in the foreclosure action.

The appellees contend that the trial court did not err in entering judgment in their favor.

21

### A. Standard of Review

"We review, without deference, the trial court's grant of a motion for judgment in a civil case. We conduct the same analysis that a trial court should make when considering the motion for judgment." *District of Columbia v. Singleton*, 425 Md. 398, 406-07 (2012) (internal citations and footnote omitted). "In deciding a motion for judgment in a jury trial, the trial court must 'consider all evidence and inferences in the light most favorable to the party against whom the motion is made.'" *Elste v. ISG Sparrows Point, LLC*, 188 Md. App. 634, 647 (2009) (quoting Maryland Rule 2-519(b)).

As we stated in *Marrick Homes LLC v. Rutkowski*, 232 Md. App. 689 (2017), the appellate court "'assumes the truth of all credible evidence on the issue and any inferences therefrom in the light most favorable to appellants, the nonmoving parties.'" *Id*. at 697-98 (quoting *Lowery v. Smithsburg Emergency Med. Serv.*, 173 Md. App. 662, 683 (2007)). "'Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration.'" *Id*. at 698 (quoting *Tate v. Bd. of Educ. of Prince George's County*, 155 Md. App. 536, 545 (2004)).

We agree with Mrs. Newsom that the trial court erred in granting the motion for judgment as to Count I, which asserted a claim pursuant to the Maryland Consumer Debt Collection Act, as well as Count II, which asserted a claim pursuant to the Maryland Mortgage Fraud Protection Act.

### B(1). The Maryland Consumer Debt Collection Act

As previously noted, CL §§ 14-202(8) and (9) of the Maryland Consumer Debt Collection Act provide:

In collecting or attempting to collect an alleged debt a collector may not:

* * *

> (8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist; [or]
>
> (9) Use a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not; . . . .

Since the time when the trial court granted the appellees' motion for judgment at the close of the plaintiff's case, the Court of Appeals has issued opinions in three cases addressing claims alleging violations of the Maryland Consumer Debt Collection Act: *Chavis v. Blibaum & Associates*, ___ Md. ___ , No. 30, September Term 2020 (filed August 27, 2021), 2021 WL 3828655 (hereinafter "*Chavis*"); *Nationstar Mortgage, LLC v. Kemp*, 476 Md. 149 (2021) (hereinafter "*Nationstar*"); and *Andrews & Lawrence Professional Services, LLC v. Mills*, 467 Md. 126 (2020) (hereinafter "*Andrews*").

In *Andrews*, the Court observed that both the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act were "enacted . . . to protect consumers from unfair or deceptive trade practices, including the collection of consumer debts." 467 Md. at 131-32. The Court further stated:

> The MCDCA regulates any "person collecting or attempting to collect an alleged debt arising out of a consumer transaction." [Business Regulation Article] § 14-201(b) (defining "collector"). **The MCDCA prohibits** eleven categories of conduct when collecting debts, including

23

placing harassing or abusive calls to a debtor or **claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist**. CL §§ 14-202(6); (8). The MCDCA also provides that a collector may not "[e]ngage in unlicensed debt collection activity in violation of the Maryland Collection Agency Licensing Act ...." CL § 14-202(10). Unlike the CPA, **the MCDCA does not contain any exemption for lawyers engaged in debt collection activities**.

467 Md. at 151 (emphasis added).

Noting that "there is no lawyers' professional services exemption for debt collection activity under the MCDCA," *id*. at 160, the Court stated in *Andrews*:

When attempting to collect a debt, **a lawyer may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist**. CL § 14-202(8). **Where a client hires a law firm to undertake debt collection activities** that could be undertaken by a debt collection agency, **the law firm can and must comply with** both the requirements of the MARPC [Maryland Attorneys' Rules of Professional Conduct] and **the debt collection parameters of the MCDCA** and CPA.

*Id*. (emphasis added).

In *Chavis*, the Court described the elements of a claim pursuant to CL § 14-202(8) as follows:

To prove a claim under [CL § 14-202(8)] of the MCDCA, a complainant must establish two elements: (1) the debt collector did not possess the right to collect the amount of debt sought; and (2) the debt collector attempted to collect the debt knowing that [it] lacked the right to do so.

___ Md. at ___; Slip op. at 15 (internal quotation marks and citations omitted).

The Court of Appeals ruled in *Chavis* that the plaintiffs in that case had "properly stated a claim under the MCDCA [as well as the Maryland Consumer Protection Act] based on the [debt collector's] collection of post-judgment interest at a rate of 10%, when in fact, the applicable legal rate was 6%." *Id*. at ___, Slip op. at 45. The debt collector

(Blibaum) had obtained judgments in favor of a landlord against tenants for breach of their leases, and then attempted to collect the judgments by requesting writs of garnishment for the amounts of the judgments plus post-judgment interest at the rate of 10%. But, in *Ben-Davies v. Blibaum & Assocs., P.A.*, 457 Md. 228, 275 (2018), the Court of Appeals had held that the correct legal rate of post-judgment interest applicable to a judgment against a tenant for breach of a residential lease is 6%. After the Court of Appeals issued its opinion in *Ben-Davies*, several tenants who had been the subject of garnishments by Blibaum seeking post-judgment interest at the rate of 10% sued the debt collector, claiming, among other things, a violation of the Maryland Consumer Debt Collection Act, CL § 14-202(8). *Chavis*, ___ Md. at ___; Slip op. at 8.

Blibaum moved to dismiss the claims asserted pursuant to CL § 14-202(8), arguing that it did not use an improper "method" of debt collection by requesting writs of garnishment, nor did it "knowingly" collect or attempt to collect unauthorized interest on the judgments. *Id.* at ___, Slip op. at 9-10. The circuit court dismissed the tenants' complaint with prejudice. On appeal, this Court affirmed the dismissal, agreeing with Blibaum that CL § 14-202 "is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself." 246 Md. App. 517, 528 (2020) (internal quotation marks and citation omitted).

The Court of Appeals, however, rejected the contention that the Maryland Consumer Debt Collection Act is limited to improper "methods" of collection activity. After reviewing *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 677-79 (2018), *Allstate Lien & Recovery Corp. v. Stansbury*, 219 Md. App. 575, 590-91

25

(2014), and *Fontell v. Hassett*, 870 F. Supp. 2d 395, 405 (D. Md. 2012), the *Chavis* Court

explained that it disagreed with the distinction that those cases made between wrongful

methods of debt collection and attempts to collect a debt not owed, stating:

> We disagree with the Court of Special Appeals' and the federal
> court's distinction between "methods" of debt collection and "amounts" of
> debts sought to be collected, when assessing a claim under CL § 14-202(8).
> Neither § 14-202(8) nor the prefatory language in § 14-202 contains the
> word "method." Rather, the statute prohibits a debt collector from engaging
> in certain conduct when "collecting or attempting to collect an alleged
> debt." The broad reach of the statute is indicated by the use of the phrase
> "alleged debt" – the conduct proscribed by the statute could concern both
> valid debts and invalid ones. Although it is not inaccurate to say that § 14-
> 202 deals with methods of debt collection, it is more accurate to describe
> the statute as regulating the conduct of a person while engaged in debt
> collection. . . .
>
> In short, nothing in the MCDCA generally, or in § 14-202
> specifically, warrants an interpretation of § 14-202(8) that limits its
> applicability to "methods" of debt collection. To the contrary, **the remedial
> nature of the MCDCA requires that we interpret § 14-202(8) broadly
> to reach any claim, attempt, or threat to enforce a right that a debt
> collector knows does not exist**. Thus, we hold that **a plaintiff may invoke
> § 14-202(8) when the amount claimed by the debt collector includes
> sums that the debt collector, to its knowledge, does not have the right
> to collect**.

*Chavis*, ___ Md. at ___; Slip op. at 22-24 (citations omitted; footnotes omitted; emphasis

added).

The *Chavis* Court held that it was clear that, in seeking to collect, by way of

garnishment, 10% post-judgment interest instead of the authorized 6% interest, Blibaum

had "claimed a right to a rate of post-judgment interest that does not exist." *Id*. at ___;

Slip op. at 25 (footnote omitted). But Blibaum argued that, even if it had attempted to

collect an amount of interest it had no right to collect, it did so without knowledge of its

26

error. *Id.* at \_\_\_; Slip op. at 26. The Court of Appeals concluded, however, that the debtors had sufficiently pled the knowledge element, and the complaint should not have been dismissed for failing to state a claim. *Id.* But, the Court cautioned: "[I]t remains to be seen whether Petitioners will be able to prove that Respondents possessed the requisite mental state to be liable under § 14-202(8)." *Id.* at \_\_\_; Slip op. at 27. The Court noted its agreement with cases that had held the knowledge element required either actual knowledge *or* reckless disregard as to the falsity of the existence of the right. *Id.*

The *Chavis* Court also agreed with the statement in *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 594 (D. Md. 1999), that the knowledge requirement "does not immunize debt collectors from liability for mistakes of law." The *Chavis* Court opined that the language in the *Spencer* opinion saying that "debt collectors 'must be held to be aware of laws affecting the validity of their collection efforts' means that, where the law *is* settled at the time a collector takes a contrary position in claiming a right, the collector's recklessness in failing to discover the contrary authority is equivalent to 'aware[ness]' (*i.e.*, actual knowledge) of the authority." *Chavis*, \_\_\_ Md. at \_\_\_, Slip op. at 30-31 (quoting *Spencer*, 81 F. Supp 2d at 595).

But § 14-202(8) does not create strict liability, and, in cases in which "the law is *unsettled* at the time the collector claims a right that later turns out not to exist, . . . a plaintiff must produce facts from which the trier of fact reasonably may infer that the defendant acted recklessly in claiming the right." *Id.* at \_\_\_; Slip op. at 31 (emphasis added). On the other hand, "A law firm's mere assertion after the fact that it acted in good faith should not suffice at the summary judgment stage to overcome an inference

27

that it acted recklessly by claiming a right in circumstances where a reasonably competent law firm would have determined that the right did not exist." *Id*. at ___ n.17; Slip op. at 32 n.17. "[W]hether a defendant acted recklessly is a question of fact." *Id*. at ___; Slip op. at 33. But, "[i]f, in the course of collecting or attempting to collect a debt, an attorney recklessly claims a right that turns out not to exist, the attorney – like any other debt collector – is liable under the MCDCA." *Id*. at ___; Slip op. at 35.

In *Nationstar*, 476 Md. 149 (2021), the Court of Appeals reviewed a claim that a debt collector had violated the Maryland Consumer Debt Collection Act by attempting to collect a fee for property inspections that were allegedly conducted after the borrower was in default on a deed of trust. The Court of Appeals explained that a provision of the Maryland usury law—CL § 12-121—restricts charging inspection fees in connection with a mortgage loan. Since 2014, the Maryland Commissioner of Financial Regulation "has taken the position that mortgage servicers like Nationstar are subject to the prohibition on inspection fees in CL § 12-121 during the life of a mortgage loan." *Nationstar*, 476 Md. at 161. In Ms. Kemp's case, her deed of trust contained language stating that the lender could charge "property inspection and valuation fees," *id*. at 163, but "may not charge fees that are expressly prohibited . . . by Applicable Law." *Id*. at 171. Nevertheless, after Ms. Kemp fell behind on her payments, Nationstar charged her "property inspection fees" that would be added to her payoff total. *Id*. at 164. When Nationstar failed to remove the inspection charges, Ms. Kemp filed suit, including a count asserting that Nationstar had violated the MCDCA, CL § 14-202(8). *Id*. at 165. The circuit court dismissed the claim under MCDCA, reasoning "that the letters sent by Nationstar to Ms. Kemp were not

28

attempts to collect a debt and thus were not within the purview of the MCDCA." *Id*. at 167. This Court affirmed the dismissal of the claim asserted pursuant to the MCDCA on different grounds: we concluded that the MCDCA prohibits only illegal "methods" of debt collection, but affords no remedy to a debtor who seeks to attack the validity of the fees being charged. *Kemp v. Nationstar Mortgage Association*, 248 Md. App. 1, 35-36 (2020).

Consistent with the *Chavis* opinion discussed above, which was filed the same day as the Court of Appeals filed its opinion in *Nationstar*, the Court rejected the distinction some courts had applied to confine the MCDCA to improper *methods* as opposed to improper *charges*. The Court reiterated in *Nationstar*:

> In an opinion issued today, we have recounted in some depth the origin and development of the "methods" versus "validity" distinction that appears in some prior cases, and particularly as it relates to an alleged violation of CL §14-202(8). *Chavis v. Blibaum & Associates, P.A.*, ___ Md. ___, ___ (2021), slip op. at 18-24. In that opinion, we conclude that "**the remedial nature of the MCDCA requires that we interpret § 14-202(8) broadly to reach any claim, attempt, or threat to enforce a right that a debt collector knows does not exist.**" *Id*. at ___, slip op. at 23 (citations omitted). In particular, **a plaintiff may invoke subsection (8) "when the amount claimed by the debt collector includes sums that the debt collector, to its knowledge, did not have the right to collect**." *Id*. at ___, slip op. at 23-24.

476 Md. at 190 (emphasis added).

The Court concluded that Ms. Kemp's allegations regarding Nationstar's effort to collect the improper inspection fees satisfied her pleading burden regarding the element of showing that a debt collector asserted a right that does not exist.

With respect to the "knowledge" element of a claim based upon CL § 14-202(8), the Court said in *Nationstar*:

> As explained today in *Chavis*, we agree that **the knowledge element is met when the law is settled, because the debt collector's recklessness in failing to discover that law is the equivalent of knowledge**. *Id*. at ___, slip op. at 30-31. However, **we do not agree that the existence of a "potentially meritorious" argument as to the existence of the right necessarily negates knowledge**. As also explained in *Chavis*, **the question whether a debt collector acted recklessly is a question of fact, to be determined in light of the particular circumstances.** *Id*. at ___, slip op. at 31, 33
>
> In short, to adequately allege the requisite knowledge for purposes of subsection (8), a plaintiff must allege that the defendant either actually knew that it did not possess a right it claimed as part of its debt collection efforts, or recklessly disregarded the falsity of that claim.

*Id*. at 191-92 (emphasis added).

In this case, applying the guidance provided by *Andrews*, *Chavis*, and *Nationstar*, we are convinced that the trial court erred in entering judgment in favor of the appellees on the count asserting a violation of the Maryland Consumer Debt Collection Act. Viewing the evidence received at trial, and all reasonable inferences that may be drawn therefrom, in a light most favorable to Mrs. Newsom—as the trial court was obligated to do in ruling upon a motion for judgment during a jury trial—we conclude that Mrs. Newsom produced legally sufficient evidence on her MCDCA claim to survive the appellees' motion for judgment.

If the jury believed Mrs. Newsom's testimony, the jury could have reasonably concluded that the appellees did not possess the right to foreclose upon her home, either because the Deed of Trust was not signed by her, or because the Deed of Trust was not

30

recorded within six months after Mr. Newsom's death and no timely claim was filed in his estate. And the jury could conclude that the appellees were placed on actual notice that Mrs. Newsom denied the validity of the debt they were endeavoring to collect via foreclosure upon her home, and therefore, the appellees acted knowingly or recklessly in proceeding without further investigation. *Cf. Yacko v. Mitchell*, 249 Md. App. 640, 693 (2021) ("The Maryland Rules only allow for this process [*i.e.,* proceeding by way of an order to docket] when there is no doubt as to the validity of the lien and lien instruments."), *cert. denied*, 474 Md. 737 (2021) ("*Yacko II*")

The evidence offered during Mrs. Newsom's case in chief established without contradiction that title to the subject property was held by Mr. and Mrs. Newsom as tenants by the entireties. When explaining the decision to grant the appellees' motion for judgment, the trial judge gave little or no consideration to this fact. But it is not a trivial matter. Mrs. Newsom's testimony, considered in the light most favorable to her case—as the court was obligated to do when ruling upon a motion for judgment in a jury trial— provided evidence that she did not sign the Deed of Trust or authorize anyone else to sign on her behalf. If that testimony is assumed to be true—as the court was obligated to do when ruling upon the motion for judgment—then the court was also obligated to assume that, if the jury concluded Mrs. Newsom did not sign the Deed of Trust, then the lien on the Property was void and unenforceable because a husband alone cannot create a mortgage lien upon property that is held by the husband and wife as tenants by the entireties. This is well-settled Maryland law.

31

In *Annapolis Banking & Trust Co. v. Smith*, 164 Md. 8 (1933), the Court of Appeals affirmed the quashal of a writ of garnishment that a creditor of a husband had served upon the lessees of a rental property owned by the debtor and his wife as tenants by the entireties. The Court observed: "It has long been the settled law of this state that property held by husband and wife as tenants by the entireties cannot be taken to satisfy the several and separate debts of either tenant." *Id*. at 9-10.The Court noted that it "is settled that the husband's interest in [property held with his wife as tenants by the entireties] cannot be sold to satisfy his debts[.]" *Id*. at 13. The Court rejected the suggestion that this shielding of assets from creditors was unfair to the creditors, stating: "[T]he creditors have no 'rights' but such as the law gives them, and the law gives them no right to take the wife's property for the husband's debts, and no reason appears why they could not have discovered, before they extended credit, what they learned afterwards, [namely,] that the property which they now seek to reach was not held by [the husband alone] but by [the husband] and his wife as tenants by the entireties." *Id*. at 16.

In *Jordan v. Reynolds*, 105 Md. 288 (1907), the Court ruled that a judgment against a husband alone did not create a lien upon real property held by the husband and wife as tenants by the entireties, explaining:

> The character of an estate held by tenancy by entireties, similar to the one here in controversy, has been settled by numerous decisions of this Court.
>
> In *McCubbin v. Stanford*, 85 Md. [378,] 380 [(1897)], where land was owned by a husband and wife as tenants by entireties and was mortgaged by the husband to secure his debts, it was held, upon foreclosure proceeding, that since one tenant by entireties cannot alien [sic] the property so as to infringe the rights of the other, the mortgage by the

husband could not affect the rights of his wife, and under the Constitution, Art. 3, sec. 43, declaring the property of the wife shall be protected from the debts of the husband, the purchaser of the husband's interest is not entitled to possession of the property as against the wife, because her undivided entirety of interest in it would thereby be destroyed and she would be deprived of the protection given her by the Constitution.

* * *

["]This estate with its incidents continues in Maryland as it existed at the common law. It differs materially from all other tenancies. The right of survivorship, which is one of its chief incidents, can not be destroyed except by the joint act of the two; and upon the death of either the other succeeds to the entire property or fund." [Quoting *Brewer v. Bowersox*, 92 Md. 567, 573 (1901).]

Applying the principles enunciated in these cases, we cannot see how the judgment in this case can be regarded in any legal sense as a lien upon the property in question, during the life of the wife.

105 Md. at 292-94.

By 1972, the Court of Appeals deemed it so well established that neither a husband nor wife acting alone could convey any interest in real estate held as tenants by the entireties that the Court issued a *per curiam* opinion in *Picking v. Yates*, 265 Md. 1 (1972), stating: "No principle is better established in our law than that tenants by the entirety, because, unlike joint tenants, they hold *per tout et non per my*, must act together to sell their property, to subject it to any interest or encumbrance, or to lease it[.]" *Id*. at 2 (citations omitted). Although this statement of Maryland law regarding encumbrances was dictum in *Picking* (because the holding of that case was that "both spouses must join in an action for damages to property which they own by the entirety," *id*.), the statement is authoritative dictum, well-supported by other cases. Similar statements appear in *Bruce v. Dyer*, 309 Md. 421, 428 n.2 (1987) ("Unlike a joint tenant, a tenant by the entireties

33

may not alienate his interest without the other tenant's consent. Similarly, a creditor may not reach tenant by the entireties property to satisfy the debt of an individual spouse." (citations omitted)); *Arbesman v. Winer*, 298 Md. 282, 296 (1983) ("We have said that the nature of the tenants by the entirety estate is that . . . they must act together to sell their property, to lease it, or to subject it to any encumbrance."); *Tizer v. Tizer*, 162 Md. 489, 495-96 (1932) ("Keeping in mind the nature of this estate [*i.e.*, a tenancy by the entireties], and the former decisions of this court . . . , no conveyance of property so held can be made except by the joint act of the husband and wife, and this includes conveyance by way of lease as well as by fee simple deed or mortgage." (citations omitted)); *Masterman v. Masterman*, 129 Md. 167, 175 (1916) (observing: "A valid mortgage can not now be given by the husband on an estate held by himself and wife as tenants by entireties (*McCubbin v. Stanford*, *supra*), . . . "); *State v. One 1984 Toyota Truck*, 69 Md. App. 235, 242 (1986) ("It logically follows that if one tenant [by the entireties] cannot dispose of the whole or any part without the assent of the other, then neither he nor she may encumber the whole or any part absent the consent of the other spouse."), *aff'd*, 311 Md. 171, 187 (1987).

It remains to be seen whether a jury will find credible Mrs. Newsom's testimony that she did not sign the Deed of Trust and was unaware that someone had signed her name to that document without her knowledge or consent. But, when the trial court was ruling upon the motion for judgment pursuant to Rule 2-519 in a jury trial, subsection (b) of that rule mandated that "the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made." If the trial court had

34

considered the evidence in that light, the court should have recognized that the jury could find that the Deed of Trust was not effective to create a lien upon the property owned by the Newsoms as tenants by the entireties, and could find that, before filing the forceclosure action, the real estate attorneys at Brock & Scott should have recognized that there was serious doubt as to the validity of the lien Brock & Scott was trying to enforce in order to collect money claimed by Capital One. *Cf. Chavis*, ___ Md. at ____, Slip op. at 30-31 ("where the law *is* settled at the time a collector takes a contrary position in claiming a right, the collector's recklessness in failing to discover the contrary authority is equivalent to 'aware[ness]' (*i.e.*, actual knowledge) of the authority"). As noted above, the *Chavis* Court cautioned: "If, in the course of . . . attempting to collect a debt, an attorney recklessly claims a right that turns out not to exist, the attorney – like any other debt collector – is liable under the MCDCA." *Id*. at ___, Slip op. at 35.

And, if the jury found that the Deed of Trust was never signed by Mrs. Newsom, and therefore, was legally ineffective and unenforceable as a lien against the Newsoms' home, then the exception to the statute of limitations for filing a claim against a decedent's estate to enforce a mortgage—(*i.e.*, ET § 8-103(d))—would not apply. In that event, the time limit for Capital One to pursue a claim against the estate of Mr. Newsom to collect an unsecured debt was as stated in ET § 8-103(a), quoted above in footnote 4, providing that untimely claims regarding a decedent's estate are barred unless presented within six months after the date of the decedent's death (at the latest). *See also* Maryland Code (1973, 2013 Repl. Vol., 2017 Supp.), Courts and Judicial Proceedings Article, § 5-1202(a), which states: "A creditor or a collector may not initiate a consumer debt

35

collection action after the expiration of the statute of limitations applicable to the consumer debt collection action." The appellants filed the order to docket suit to foreclose upon Mrs. Newsom's home well after the time limit had expired for pursuing suits against a decedent's estate for collection of unsecured debts.

Further, we held in *Yacko I*, 232 Md. App. at 641, that "a party cannot institute a foreclosure upon forged documents." As a consequence, the appellees' utilization of an order to docket suit to foreclose upon the Property pursuant to the questioned Deed of Trust was an inappropriate *method* of seeking to collect the debt incurred by Mr. Newsom. We explained in *Yacko II* that "a 'power of sale' foreclosure proceeding, governed by Title 14 of the Maryland Rules and commenced under Maryland Rule 14-207(a)(1), "'is intended to be a summary, in rem proceeding[.]"'" 249 Md. App. at 693 (quoting *Huertas v. Ward*, 248 Md. App. 187, 201 (2020) (quoting *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 726 (2007)). *See also Pulliam v. Dyck-O'Neal, Inc.*, 243 Md. App. 134, 143 (2019) ("Foreclosure is a summary *in rem* proceeding that grants the mortgagee the power to dispose of the property." (citation omitted)).

We emphasized in *Yacko II* that, when there is doubt as to the validity of the lien and the lien instruments, it is inappropriate for a mortgage holder to utilize the summary *in rem* forclosure process instead of filing an *in personam* suit against the debtor to litigate the enforceability of the lien:

> As a summary proceeding meant to demonstrate a plaintiff's right to foreclose, "[i]n a strict sense, 'an order to docket is not a pleading,' because it does not 'raise issues between the parties' and need not 'contain any factual allegations.' " *Huertas*, 248 Md. App. at 201, 241 A.3d 1 (citing *Pacific Mortg. & Inv. Grp., Ltd. v. LaGuerre*, 81 Md. App. 28, 39, 566

36

A.2d 780 (1989)). The remedy, confined to Title 14 of the Maryland Rules, is the sale of the property. . . . **The Maryland Rules only allow for this process when there is no doubt as to the validity of the lien and lien instruments.** *See* Md. Rule 14-207(b) (providing requirements to foreclose). The sole objective of a power of sale is to allow sale of the property as stated in the mortgage, in the event of default. *Simard v. White*, 383 Md. 257, 281, 859 A.2d 168 (2004). **In other words, an order to docket foreclosure is premised on the requirement that the lender has submitted true and accurate copies of the lien instruments, has a right to foreclose**, and can calculate the debt. Under Maryland Rule 14-211, a borrower or other interested person may challenge the validity of the lien or the right of the lender to foreclose by filing a motion to stay the sale and dismiss the action. Md. Rule 14-211(a)(3)(B); *see also Bates v. Cohn*, 417 Md. 309, 318, 9 A.3d 846 (2010); *Daughtry v. Nadel*, 248 Md. App. 594, 602, 242 A.3d 1158 (2020).

249 Md. App. at 693-94 (emphasis added).

As the Court of Appeals held in *Chavis*, ___ Md. ___, Slip op. at 23: "[T]he remedial nature of the MCDCA requires that we interpret § 14-202(8) broadly to reach any claim, attempt, or threat to enforce a right that a debt collector knows does not exist."

For all these reasons, the trial court erred in granting the appellees' motion for judgment on Count I.

### B(2). The Maryland Mortgage Fraud Protection Act

The MMFPA generally prohibits the deliberate use of misrepresentations during the mortgage lending process. As noted above, RP §§ 7-401(d)(1)-(4) of the MMFPA provide:

(d) "Mortgage fraud" means any action by a person made with the intent to defraud that involves:

(1) **Knowingly making any deliberate misstatement, misrepresentation, or omission** during the mortgage lending process **with the intent that the misstatement, misrepresentation, or**

**omission be relied on by a** mortgage lender, **borrower, or any other party to the mortgage lending process**;

(2) **Knowingly creating or producing a document for use** during the mortgage lending process **that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a** mortgage lender, **borrower, or any other party to the mortgage lending process**;

(3) **Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission** during the mortgage lending process **with the intent that the misstatement, misrepresentation, or omission be relied on by a** mortgage lender, **borrower, or any other party to the mortgage lending process**;

(4) Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1), (2), or (3) of this subsection; . . . .

(Emphasis added.)

RP § 7-401(e)(1) broadly defines the phrase "Mortgage lending process" as meaning "the process by which a person seeks or obtains a mortgage loan," but also including:

(i) The solicitation, application, origination, negotiation, **servicing**, underwriting, signing, closing, and funding **of a mortgage loan;** and

(ii) The notarizing of any document in connection with a mortgage loan.

RP § 7-401(e)(2)(i)-(ii) (emphasis added).

RP § 7-401(f) states: "'Mortgage loan' has the meaning stated in § 11-501 of the Financial Institutions Article." In turn, Maryland Code (1980, 2011 Repl. Vol.), Financial Institutes Article, § 11-501(l) provides this definition of "Mortgage loan":

(l) "Mortgage loan" means any loan primarily for personal, family, or household use that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or residential real estate on which a dwelling is constructed or intended to be constructed.

The MMFPA does not define the terms "mortgage lender," "mortgage borrower," "misstatement," "misrepresentation," or "omission."

Although nearly all of the activities included within the statute's definition of "mortgage lending process" describe conduct that takes place before a loan is considered in default, the term "servicing" has been applied to the loan collection process when a deed of trust is in default. In *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 469 (D. Md. 2013), the court stated:

> Although Chase seeks to curtail the breadth of the statute to exclude loan servicing with regard to defaulting borrowers, this Court has held that "the plain language of the statute clearly countenances post-closing servicing activities." Stovall [*v. Suntrust Mortgage, Inc.*], 2011 WL 4402680, at *10 [(2011) (unreported)]. Chase concedes that foreclosure is a "post-servicing activity" under the MMFPA.
>
> In *Stovall,* this Court held that the plaintiff's allegations regarding the bank's substitute trustee's use of fraudulent affidavits in a foreclosure action was sufficient to plead a plausible violation of the MMFPA. *Stovall*, 2011 WL 4402680, at *10.

*Accord Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 800 (D. Md. 2013) (rejecting the defendants' argument that collection actions taken during post-default foreclosure proceedings do not fall within the MMFPA's definition of "mortgage lending process," and stating: "at least two judges in this District have held that the MMFPA clearly countenances post-closing servicing activities" (internal quotation marks and citations omitted)).

39

*Marchese* held that the activity of "servicing" included use of fraudulent affidavits in a foreclosure action, and that activity could support a claim under the MMFPA. For the same reason, we conclude that the evidence that appellees had, in the foreclosure action, used affidavits from Capital One that contained a number of erroneous statements, *after* being put on notice of the erroneous nature of the statements therein, provided sufficient basis for the trial court to deny the motion for judgment with respect to the Maryland Mortgage Fraud Protection Act asserted in Count II.

### III. Trial court's evidentiary rulings during Mrs. Newsom's case

In this appeal Mrs. Newsom also challenges four evidentiary rulings made by the trial court. She contends the circuit court erred in (1) excluding certain "background evidence"; (2) excluding two witnesses who were expected to provide lay opinion testimony about their observations of Mrs. Newsom's emotional distress; (3) excluding the appellees' "judicial admissions in papers" from the foreclosure action; and (4) excluding certain evidence of Mrs. Newsom's attorney's fees and costs incurred in defending against the foreclosure action as proof of damages in the instant case. Because we are remanding the case to the circuit court for a new trial on Mrs. Newsom's claims pursuant to Counts I and II, and these issues either may not arise again on remand, or may not be dealt with in the same manner on remand by the new judge, we decline to address these points in this appeal.

### IV. Recusal of the trial judge

Appellant's final argument asserts that the trial judge should have recused himself for multiple reasons. As a remedy, appellant asked that the case be reversed and

remanded with an instruction that it be specially assigned to a judge from another jurisdiction.

Because the judge who presided at the trial of this case did not win a contested election conducted after the trial, that judge is no longer eligible to sit in the proceedings that will be conducted in this case upon remand. Accordingly, we need not address appellant's argument that the trial judge should be excluded from participating in proceedings on remand.

Appellant also asked us to consider an issue that came to counsel's attention after the trial was over, namely, whether the judge had an undisclosed conflict of interest because of the relationship between the defense counsels' law firm and the Prince George's County Committee to Elect the Sitting Judges. That issue was never considered in this case in the Circuit Court for Prince George's County. This Court has held that a party's failure to move for recusal in the circuit court does not preclude us from exercising our discretion to review the issue on appeal. *Scott v. State*, 110 Md. App. 464, 486 (1996) (a judge's failure to recuse is one of the "limited category of issues . . . which an appellate court ordinarily will address even though they were not raised by a party"). But, in this case, we have been provided too little documentation to make a determination on this issue. We recognize, however, that a similar issue could arise again on remand, depending upon the assignment of the case and the identity of the attorneys conducting the new trial, and we provide these general comments for guidance on the topic. *See* Maryland Rule 8-131(a).

The documents provided to us by appellant indicate that the pertinent judges' election campaign committee acted on behalf of 19 circuit court judges, and defense counsels' firm had either donated or loaned substantial sums of money to the committee or performed legal services for the committee. Affiliations of that nature between a judge and litigation counsel may implicate the need for disclosures and possible disqualification pursuant to the Maryland Code of Judicial Conduct. *See* Maryland Rule 18-102.11, relative to disqualification from hearing a case in which the judge's impartiality might reasonably be questioned.

The Court of Appeals has long recognized: "It is, of course, important that the judicial process not only be fair, *but that it appear to be fair*." *Boyd v. State*, 321 Md. 69, 85-86 (1990) (emphasis added). *See also Smith v. State*, 64 Md. App. 625, 635 (1985) ("'The law requires the trial of a defendant not only to be fair but to give every appearance of being fair.'" (quoting *Scott v. State*, 289 Md. 647, 655 (1981))).

Rule 18-102.11(a)(1)-(5) informs judges of particular situations in which the judge is disqualified because "the judge's impartiality might reasonably be questioned." Under Rule 18-102.11(c), a judge may sometimes avoid recusal by disclosing the reason that the judge believes potentially disqualifies the judge from hearing or deciding the matter. If the judge has disclosed the potential basis for disqualification, Rule 18-102.11(c) requires that the judge also provide litigants an opportunity to consider waiving the judge's disqualification under prescribed circumstances. Since August 1, 2017, Rule 18-102.11 has provided in pertinent part:

RULE 18-102.11.  DISQUALIFICATION (ABA RULE 2.11)

**(a) <u>A judge shall disqualify himself or herself in</u> any proceeding in which the judge's impartiality might reasonably be questioned**, including the following circumstances:

> (1) The judge has a personal bias or prejudice concerning a party or a party's attorney, or personal knowledge of facts that are in dispute in the proceeding.

> \* \* \*

**(c) A judge subject to disqualification under this Rule, <u>other than for bias or prejudice under subsection (a)(1) of this Rule</u>,** may disclose on the record the basis of the judge's disqualification and may ask the parties and their attorneys to consider, outside the presence of the judge and court personnel, whether to waive disqualification. If, following the disclosure, the parties and attorneys agree, without participation by the judge or court personnel, that the judge should not be disqualified, the judge may participate in the proceeding. The agreement shall be incorporated into the record of the proceeding.

(Emphasis added.)

The official comment to Rule 18-102.11 provides further guidance:

COMMENT

[1] **<u>Under this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of subsections (a)(1) through (5) apply</u>. In this Rule, "disqualification" has the same meaning as "recusal."**

[2] **A judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed.**

[3] By decisional law, the rule of necessity may override the rule of recusal. For example, a judge might be required to participate in judicial review of a judicial salary statute or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. **When the rule of necessity does override the rule of recusal, the judge must disclose on the record the**

**basis for possible disqualification and, if practicable, use reasonable efforts to transfer the matter to another judge.**

[4] **A judge should disclose on the record information that the judge believes the parties or their attorneys might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification.**

[5] This procedure gives the parties an opportunity to waive the recusal if the judge agrees. **The judge may comment on possible waiver but must ensure that consideration of the question of waiver is made independently of the judge.** A party may act through an attorney if the attorney represents on the record that the party has been consulted and consents. As a practical matter, a judge may request that all parties and their attorneys sign a waiver agreement.

(Emphasis added.)

As noted in Comment [2], quoted above, the judge's obligation to recuse (when applicable) "applies regardless of whether a motion to disqualify is filed."

We also note that the Maryland Judicial Ethics Committee has issued a published opinion addressing several issues related to recusal of judges who are participating in, or have participated in, election campaigns. Opinion Request Number 2020-04; 2020 WL 1856123 (issued April 7, 2020).

If, upon remand, either appellant or appellees request recusal of a judge assigned to hear proceedings in this case, the judge shall address the request for recusal at that time.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED IN PART AND AFFIRMED IN PART AS SET FORTH IN THIS OPINION. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**
> **COSTS TO BE PAID BY APPELLEES.**